UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

D'ANGELO J. PUGH,

     Plaintiff,

v.                                                          Case No.  5:18-cv-117-TKW/MJF

MARK S. INCH, *et al*.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

     Defendants have moved for summary judgment in this section 1983 action which alleges use of excessive force, deliberate indifference to a serious medical need, failure to provide due process, and a violation of Florida regulations. (Docs. 42, 59). Plaintiff responded in opposition. (Docs. 49, 51). For the reasons set forth below, the undersigned recommends that Defendants' motions for summary judgment be granted.[1]

## I.    Background

     The undersigned states the facts—derived from Plaintiff D'Angelo J. Pugh's ("Pugh") verified third amended complaint—in the light most favorable to Pugh, as he

---

[1] The case was referred to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b); Fed R. Civ. P. 72(b).

is the non-moving party. (Doc. 14).[2] Pugh was and is an inmate of a facility run by the Florida Department of Corrections ("FDC").

## A.    Eighth Amendment Excessive Force Claim

On June 21, 2017, a "major disturbance" occurred at the prison where Pugh was incarcerated. (Doc. 14 at 6). As a result, correctional officers ordered all inmates in Pugh's area to return to their cells and secure their cell doors. (*Id.*). Pugh allegedly complied. (*Id.*).

The chief of security at the Gulf Correctional Institution Annex—Defendant Noel Mercer—ordered correctional officers to deploy "chemical gases" to the area in which Pugh was housed. (*Id.*). Pugh alleges that Defendant Sergeant Randy Jackson discharged "chemical agents," and "Sargent Fogul was a participant." (Doc. 14 at 7).[3] As a result of being exposed to these "chemical agents," Pugh suffered an asthmatic attack. (*Id.* at 7).

Pugh does not allege—or offer any evidence about—the duration to which he was exposed to these "chemical agents," the type of "chemical agents" employed, and

---

[2] Pugh mislabeled his complaint "Second Amended," insofar as it is his third amended complaint. (Doc. 14).

[3] Evidence submitted by Defendants indicates that the correct name of "Sargent Fogul" is "Michael Fogle." (Doc. 42 at 2; Doc. 42-1 at 5). This report and recommendation, therefore, will employ the correct spelling of Fogle's surname except when quoting documents submitted by Pugh.

the effect that these "chemical agents" had on him—other than causing him to suffer

an asthmatic attack.

**B.**     <u>**Eighth Amendment Claim for Deliberate Indifference to a Medical Need**</u>

Pugh also alleges that he suffered an asthmatic attack and "was denied medical

for treatment. Sargent Fogul was a participant and didn't uphold his duty to Insure that

any violations occur due to being the Leader of the (R.R.t) at time of incident." (Doc.

14 at 7). Pugh further alleges that he was required to use an "inhaler" provided by

another inmate to treat his asthmatic attack. (*Id.*).

**C.**     <u>**Due Process Claim for Failure to Respond to Grievances**</u>

Pugh further alleges that he complained of "wrong doing" to Defendant Julie

Jones, the former Secretary of the FDC. (*Id.*). Pugh does not state the nature of the

"wrong doing" about which he complained, the number of complaints that he made to

Jones, and the dates that he made these complaints. Regardless, Jones allegedly

ignored Pugh's complaints. (*Id.* at 7).

**D.**     <u>**"Chapter 33 Institutional Rules" Claim**</u>

In the "statement of claims" section of his third amended complaint, Pugh also

alleges that "[a]ll Chapter 33 Institutional Rules were violated." (Doc. 14 at 8). Pugh

does not provide any facts to support this claim, he does not identify which Defendants

allegedly violated the institutional rules, and he does not state the specific provisions

of the institutional rules that the intended Defendant(s) allegedly violated.

## II.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). An issue of fact is "material" if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).

When addressing a motion for summary judgment, a court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hickson*, 357 F.3d at 1260 (quoting *Anderson*, 477 U.S. at 251-52). At "the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S at 249. A "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry . . . asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict . . . ." *Id.* at 252. In evaluating a summary judgment motion, all "justifiable inferences" must be resolved in the

nonmoving party's favor so long as there is a genuine dispute as to those facts. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *see Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.    Discussion

**A.    <u>Excessive Force Claim (Mercer, Jackson, and Fogle)</u>**

For multiple reasons discussed below, Defendants are entitled to summary judgment on Pugh's claim that they used excessive force.

Use of force by prison officials violates the Eighth Amendment's proscription against cruel and unusual punishments when the force is applied maliciously and sadistically for the very purpose of causing harm. *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see Wilkins v. Gaddy*, 559 U.S. 34, 38-39 (2010) (per curiam); *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). To prevail on an excessive force claim under the Eighth Amendment, a plaintiff must establish the following five elements:

(1) the defendant was acting under color of law;

(2) the defendant used force on the plaintiff;

(3) the force that the defendant used, viewed objectively, was "sufficiently serious" to violate the constitution;

(4) the defendant acted with a sufficiently culpable state of mind, that is, maliciously and sadistically for the very purpose of causing harm to the plaintiff; and

(5) the defendant proximately caused injury to the plaintiff.

*Wilkins*, 559 U.S. at 36-38; *Hudson v. McMillian*, 503 U.S. 1, 4, 7 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Whitley*, 475 U.S. at 320-21; *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020); *Petersen v. Smith*, 762 F. App'x 585, 592 (11th Cir. 2019).

1.    *Use of Force Element (Jackson and Fogle)*

Use of "tear gas" and chemical agents can amount to the use of excessive force in violation of the Eighth Amendment. *Redmond v. Crowther*, 882 F.3d 927, 936 (10th Cir. 2018) ("The decision to deploy CS gas indisputably involved the use of force . . . ."); *Torres-Viera v. Laboy-Alvarado*, 311 F.3d 105, 108 (1st Cir. 2002) ("[E]xcessive use of tear gas by prison officials can amount to an Eighth Amendment violation."); *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) (stating it "is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain."). Here, in Pugh's verified third amended complaint, he alleges that, although Pugh was compliant and obedient, Mercer ordered Jackson to deploy "chemical gas" and "chemical agents," and Jackson did so. (Doc. 14 at 6-7). Standing alone, that would be sufficient evidence to create a genuine issue of material fact as to the "use of force" element as to Mercer and Jackson.

As to Jackson, however, Defendants submitted a prison work schedule which indicates that Jackson and Fogle were not on the work schedule on June 21, 2017, the

date Pugh alleges that Jackson deployed the chemical gas/agents. (Doc. 42-1; Doc. 42-6). In light of this evidence, to withstand summary judgment, Pugh was required to point to admissible evidence which contradicts Defendants' evidence and demonstrates that a genuine issue of material fact exists: that Jackson was present at the prison on June 21, 2017, and he was at least one of the persons who deployed the chemical gas/agents.

In response to the prison work schedule, however, Pugh offered two sentences: "As is common knowledge, regardless if it's document [sic] that Sgt. Foguel, [sic] Randy Gregory wasn't on 'Active Duty'. It's a known fact that when a Disturbance Of A Great Magnitude Occurs <u>All</u> available 'On Duty' and 'off duty' officials are to report to work to assist in Regaining Control of a Situation." (Doc. 51 at 3).

That is insufficient to create a genuine issue of material fact. First, it is worth noting that Pugh does not even address the evidence showing that *Jackson* was not present at the prison on June 21, 2017. Rather, he only discusses *Fogle*. For that reason alone he has failed to show that there is a genuine issue of material fact as to whether Jackson was one of the correctional officers who deployed chemical gas/agents.

Second, it is not "common knowledge" to the undersigned that disturbances of a great magnitude result in all "available" correctional officers reporting to work. Asserting that a proposition is a matter of "common knowledge" does not make it so. *Shuput v. Heublein*, Inc., 511 F.2d 1104, 1106 (10th Cir. 1975). Pugh, therefore, was

required to offer some evidence in support of this conclusory assertion. He failed to do so, however.

Third, even if this proposition were common knowledge, Pugh does not assert—or offer evidence demonstrating—that both Fogle and Jackson were "available" to come to the prison to assist in addressing the disturbance. If Fogle and Jackson were not available and present at the prison, they certainly could not have used excessive force on Pugh. Pugh has failed to create a genuine issue as to Fogle and Jackson's presence at the prison and their use of force, therefore. For this reason alone, Fogle and Jackson are entitled to summary judgment on Pugh's excessive force claim.

Additionally, as to Fogle, Pugh alleges only that he "was a participant." (*Id.* at 7). Pugh does not specify the activities in which Fogle "was a participant," but the undersigned will presume that Pugh is alleging that Fogle "was a participant" in the deployment of the chemical gas/agents. Nevertheless, Pugh offers no details about Fogle's participation in the deployment of chemical gas/agents. Indeed, Pugh offers no details about the use of "chemical gas" and "chemical agents" generally. Pugh does not allege—and does not offer any evidence—indicating that Fogle was the person who deployed the chemical gas/agents. Pugh does not allege—and does not offer any evidence—indicating the extent of Fogle's participation in the use of chemical gas/agents. An allegation that someone merely "was a participant" is simply too vague and conclusory even to state a claim of excessive force, much less create a genuine

issue of material fact sufficient to withstand summary judgment. *See Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that summary judgment is appropriate when an inmate produces nothing "beyond his own conclusory allegations"); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment[.]").

Accordingly, for these reasons, both Jackson and Fogle are entitled to summary judgment on Pugh's excessive force claim.

### 2.   *Culpable State of Mind Element (Mercer, Jackson, and Fogle)*

With respect to Mercer, Jackson, and Fogle, Pugh also failed to allege—and submit evidence to establish—the subjective element of an excessive force claim.

To establish a claim of excessive force under the Eighth Amendment, a plaintiff must offer some evidence that a defendant acted maliciously and sadistically for the very purpose of causing harm to the plaintiff. *Sconiers*, 946 F.3d at 1265; *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010). "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Whitley*, 475 U.S. at 322.

Pugh's verified third amended complaint does not allege—and he offers no evidence indicating—that Mercer, Jackson, and Fogle acted maliciously and sadistically for the very purpose of causing harm to Pugh. Indeed, Pugh does not even

allege that Mercer, Jackson, and Fogle acted recklessly. Rather, Pugh alleges in his third amended complaint that Mercer—who allegedly gave the order to deploy the chemical gas/agents—acted with "negligence." (Doc. 14 at 6). Mere negligence is insufficient to establish the subjective element of a claim of excessive force under the Eighth Amendment. *Wilson*, 501 U.S. at 297 (holding that only "wantonness" is sufficient to violate the Eighth Amendment); *Whitley*, 475 U.S. at 319 ("After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment."). For excessive force to be actionable, "the application of force must itself be intentional, or at least reckless." *Patel v. Lanier County, Ga.*, ___ F.3d ___ n.8, 2020 WL 4591270, at *7 n.8 (11th Cir. 2020) (noting the standard for pretrial detainees under the Fourteenth Amendment).

Because Pugh failed to allege—and submit evidence indicating—that Mercer, Jackson, and Fogle acted maliciously and sadistically for the very purpose of causing harm to Pugh (*i.e.*, wantonly), he has failed to state a claim for excessive force and has failed to demonstrate that there is a genuine issue of material fact as to this claim.[4] For

---

[4] A court has no duty to gather evidence for litigants or to sift through the record in an effort to find evidence that might create a genuine issue of material fact. *See Atlanta Gas Light Co. v. UGI Utils., Inc*., 463 F.3d 1201, 1208 n.11 (11th Cir. 2006) (noting that a district court does not have "an obligation to parse a summary judgment record to search out facts or evidence not brought to the court's attention."). Nevertheless, the undersigned ordered Defendants to produce any video recordings relevant to this case. (Doc. 61). In response, Defendants produced multiple video recordings. (Doc. 62). The

this reason as well, Mercer, Jackson, and Fogle are entitled to summary judgment on Pugh's excessive force claim.

**B.**   **Deliberate Indifference to a Medical Need (Mercer, Jackson, and Fogle)**

To the extent Pugh asserts an Eighth-Amendment claim for deliberate indifference to a serious medical need, he has failed to state a claim upon which relief may be granted and failed to demonstrate that a genuine issue of material fact exists.

To state a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment, a plaintiff must allege that:

(1) he had a serious medical need;

(2) the defendant was deliberately indifferent to that need; and

(3) there is a causal connection between the defendant's act or omission and the constitutional deprivation.

*Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009); *Rodriguez v. Sec'y, Dep't of Corr.*, 508 F.3d 611, 625 (11th Cir. 2007).

**1.**   ***Failure to Allege the Existence of a Serious Medical Need***

Pugh failed to allege that he suffered from an objectively-serious medical condition.

_____

undersigned and his staff reviewed these recordings but did not see anything that creates a genuine issue of material fact.

A serious medical need is a medical condition that "has been diagnosed by a physician as mandating treatment," a condition that is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention," or a condition that is worsened by a delay in treatment. *Mann*, 588 F.3d at 1307. Depending on its severity, an asthmatic attack could constitute a serious medical need. *See Carlson v. Green*, 446 U.S. 14, 16 n.1 (1980) (noting that an inmate died after prison staff allegedly failed to treat his asthmatic attack); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016) (noting that an inmate's asthmatic attack resulted in his death); *Adams v. Poag*, 61 F.3d 1537, 1539-40 (11th Cir. 1995) (observing that a prisoner's chronic asthma, which resulted in frequent asthmatic attacks, constituted a serious medical need).

But the severity of asthmatic symptoms and attacks varies. *See Davis v. Norwood*, 614 F. App'x 602, 604 (3d Cir. 2015) (noting that an inmate's asthma "was adequately managed"). Indeed, some persons who suffer from asthma can tolerate exposure to "pepper spray." *See Davis v. Thomas*, 558 F. App'x 150, 155 (3d Cir. 2014) (noting that medical evidence established that an inmate's "asthma condition was not so serious that he could never be near the use of pepper spray, or that he risked serious damage to his future health if exposed to second-hand pepper spray"). Asthma and asthmatic attacks may be mild. *Oliver v. Deen*, 77 F.3d 156, 160 (7th Cir. 1996) (noting that the plaintiff had "only a mild case" of asthma). Because not every case of

asthma nor every asthmatic attack rises to the level of a "serious medical need," a plaintiff alleging that his asthma or an asthmatic attack constituted a serious medical need must allege sufficient facts demonstrating the seriousness and nature of any medical need.

Here, Pugh did not state that his asthmatic attack was severe, that he could not breath, or that he was even experiencing shortness of breath. He did not identify any symptoms relating to his alleged asthmatic attack. He also did not identify the nature of his medical need—beyond indicating its relationship to his asthma and the fact that he relied on a fellow inmate's "inhaler." In light of these deficiencies, Pugh failed to allege an essential element of an Eighth Amendment claim of deliberate indifference to a serious medical need. *See Leonard v. Monroe Cty.*, 789 F. App'x 848, 851 (11th Cir. 2019) (holding that the plaintiff failed to state a claim of deliberate indifference to a serious medical need when he "alleged no facts about his medical condition or symptoms"); *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (holding that "the facts underlying a claim of 'deliberate indifference' must *clearly evince* the medical need in question").

### 2.    *Failure to Identify Any Actor Who Denied Pugh Medical Care*

Pugh also failed to state a claim insofar as he did not identify a Defendant who denied him medical treatment.

Pugh stated in his verified third amended complaint:

> I had an asthma attack and was denied medical for treatment. Sargent Fogul was a participant and didn't uphold his duty to Insure that any violations occur due to being the Leader of the (R.R.t) at time of incident. . . . I had to Receive a Inhaler From another Inmate to treat my asthma attack.

(Doc. 14 at 7). As noted above, it is unclear what being "a participant" means in this context, and it is unclear whether Pugh is alleging that Fogle was part of the alleged excessive use of force or the alleged failure to provide medical care. Stating a claim, even by a *pro se* litigant, requires greater specificity than that. To state a claim, a plaintiff must at least identify the actor or actors who allegedly violated his rights. *See Ashcroft*, 556 U.S. at 678 (noting that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face). For this reason, too, Pugh has failed to state a claim of deliberate indifference to a serious medical need.

### 3.    *Failure to Allege Deliberate Indifference*

Pugh also failed to allege that any actors were deliberately indifferent to his alleged medical needs.

Deliberate indifference is a higher standard than simple negligence and entails three components: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Farrow v. West*, 320 F.3d 1235, 1245 (11th Cir. 2003) (citing *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)); *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013).

Subjective knowledge demands that "the defendant 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099-1100 (11th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Whether a particular defendant has subjective knowledge of the risk of serious harm is a question of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326 (11th Cir. 2007) (citing *Farmer*, 511 U.S. at 842).

Here, Pugh did not allege that any Defendant was deliberately indifferent. Rather, he specifically alleged that Mercer was merely negligent. (Doc. 14 at 6). Mere negligence does not constitute deliberate indifference. *Wilson*, 501 U.S. at 305. In any event, Pugh also does not allege facts indicating that any Defendant knew: (1) that Pugh suffered from asthma; (2) that Pugh was experiencing an asthmatic attack on June 21, 2017; and (3) that Pugh had a serious medical need on June 21, 2017. For example, Pugh does not allege that he told any Defendant about his asthmatic attack while it was occurring, that any Defendant saw him having an asthmatic attack, or that he asked any Defendant to obtain medical care for him. This constitutes a failure to

allege the deliberate indifference element. Accordingly, for this reason too, Pugh failed to state a claim of deliberate indifference to a serious medical need.

### 4.    *Failure to Allege Injury and Causation*

Finally, Pugh also failed to allege that a deprivation of medical care caused him an actual injury. Indeed, Pugh suggests that his use of a fellow inmate's "inhaler" sufficiently addressed whatever symptoms he experienced. (Doc. 14 at 7). He does not state what additional medical care he required. Pugh, therefore, has not identified a concrete injury that he suffered. He likewise has failed to allege that any actions by any Defendant caused his unspecified injury. For these reasons, as well, Pugh has failed to state a claim of deliberate indifference to a serious medical need.

### C.    <u>Due Process Claim for Failure to Respond to Grievances (Jones)</u>

Pugh also has failed to state a claim against Julie Jones—the former Secretary of the FDC—in her individual capacity for a violation of his right to due process.[5]

Pugh alleges that he complained to Jones of "wrong doing." (Doc. 14 at 7). Pugh, however, does not state the nature of the "wrong doing" about which he complained, the number of complaints that he made to Jones, and the dates he made the complaint(s).

---

[5] In January 2019, Mark S. Inch replaced Defendant Julie Jones as the Secretary of the FDC. As such, claims against Defendant Jones in her official capacity are construed as against Mark S. Inch. *See* Fed. R. Civ. P. 25(d). However, to the extent Plaintiff alleges a due process claim against Julie Jones in her individual capacity, Pugh has failed to state a claim.

As a matter of law, Pugh cannot sustain a due process claim against the former Secretary of the FDC for failing to address his grievances. A failure to investigate or respond to Plaintiff's grievances does not give rise to a constitutional violation. *See Wildberger v. Bracknell*, 869 F.2d 1467, 1467-68 (11th Cir. 1989) (holding that a violation of the grievance procedure did not rise to the level of a constitutional violation, because there is no constitutional right to a grievance procedure); *see also Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2011) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner . . . . A state created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); *Thomas v. Warner*, 237 F. App'x 435, 437-38 (11th Cir. 2007) ("A prisoner does not have a constitutionally-protected liberty interest in an inmate grievance procedure."); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state.").

Accordingly, for this reason, Pugh has failed to state a due process claim against Julie Jones in her individual capacity.

## D.    <u>Eleventh Amendment Immunity (Inch)</u>

Defendant Mark S. Inch argues that, because of the Eleventh Amendment to the United States Constitution, the District Court should dismiss any claims against him in his official capacity to the extent it seeks damages.

The Eleventh Amendment is generally a bar to suit for monetary damages by an individual against a state or its agencies, or against officers or employees of the state or its agencies in their official capacity unless the state has consented to suit, congress has abrogated the immunity, or the plaintiff proceeds under *Ex parte Young*. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *Seminole Tribe of Fla. v. State of Fla.*, 11 F.3d 1016, 1021 (11th Cir. 1994) (citing *Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)) ("[T]he states' immunity is not absolute. More specifically, states are not immune if the circumstances indicate consent, abrogation or the fiction of *Ex parte Young*. If none of these three exceptions applies, however, the Eleventh Amendment serves as a jurisdictional bar to the suit.").

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S 658, 690 n.55 (1978)); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Thus, in a section 1983 action "a claim against a defendant in his official capacity is the same as a claim against his employer." *Christman v. Saint Lucie Cty., Fla.*, 509 F. App'x 878, 879 (11th Cir. 2013) (citing *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 785 n.2 (1997)); *Faulkner v. Monroe Cty. Sheriff's Dep't.*,

523 F. App'x 696, 701 (11th Cir. 2013) ("A suit against a person in their official capacity is be treated as a suit against the entity.").

In this case, a suit against Defendant Inch—the secretary of the FDC—in his official capacity is a suit against the FDC. The FDC, a state agency, is "clearly the equivalent of the State of Florida for the Eleventh Amendment purposes." *See Walden v. Fla. Dep't of Corr.*, 975 F. Supp. 1330, 1331 (N.D. Fla. 1996). Thus, the FDC is immune from suit for monetary damages unless the state immunity was waived by the State of Florida or abrogated by congress. *See Schloper v. Bliss*, 903 F.2d 1373, 1379 (11th Cir. 1990). The State of Florida has not waived immunity and Congress has not expressly abrogated state immunity in section 1983 cases. *See Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986) ("It is clear that Congress did not intend to abrogate a state's eleventh amendment immunity in Section 1983 damage suits, [and] Florida's limited waiver of sovereign immunity was not intended to encompass section 1983 suits for damages.") (internal citation and quotations omitted). Thus, the Eleventh Amendment is a bar to Pugh's claim for monetary damages against Defendant Inch in his official capacity.

## E.    **"Chapter 33 Institutional Rules" Claim (Unspecified Defendants)**

Pugh also has not stated a claim under "Chapter 33 Institutional Rules."

Pugh makes the conclusory assertion that "[a]ll Chapter 33 Institutional Rules were violated" during the incident. (Doc. 14 at 8). Pugh does not provide any facts to

support this claim, he does not identify which Defendants allegedly violated the institutional rules, and he does not state the specific provisions that that unnamed Defendants allegedly violated. He also does not offer any authority indicating that Florida law has created a cause of action for unspecified violations of Chapter 33 Institutional Rules.[6]

Pugh's vague and conclusory allegation does not state a plausible due process claim (or other claim) for the use of chemical agents. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Sandin v. Conner*, 515 U.S. 472, 481-82 (1995) (holding that prison regulations are not intended to confer rights or benefits on inmates but are merely designed to guide correctional officials in the administration of prisons); *Hildebrandt v. Butts*, 550 F. App'x 697, 700 (11th Cir. 2013) (holding that prisoner's due process claim "misses the mark by equating state-law administrative procedure with constitutional due process."). For this reason, Defendants are entitled to summary judgment on this claim.

---

[6] A cause of action exists under state law only when a particular state's statutory law or common law so declares. *Ragan v. Merch. Transfer & Warehouse Co.*, 337 U.S. 530, 533 (1949) (noting that federal courts must look to state law to determine the cause of action and a claim brought pursuant to state law "accrues and comes to an end when local law so declares"). Federal courts do not have the authority to create new causes of action under state law. *See Wolk v. Saks Fifth Ave., Inc.*, 728 F.2d 221, 223 (3d Cir. 1984) (noting that it is "beyond the authority of a federal court . . . to create entirely new causes of action").

### IV.   Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS**:

1.      Defendants' motions for summary judgment (Docs. 42, 59) be

        **GRANTED**; and

2.      The clerk of the court be directed to close the case file.

At Panama City Beach, Florida, this <u>18th</u> day of August, 2020.

<u>/s/ *Michael J. Frank*</u>
**Michael J. Frank**
**United States Magistrate Judge**

### <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of this report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**